UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE MATTHEWS,<br>   Plaintiff,<br><br>vs.<br><br>ILLINOIS DEPARTMENT OF<br>CORRECTIONS, et. al.,<br>   Defendants | No. 19-1327 |

**CASE MANAGEMENT ORDER**

This cause is before the Court for consideration of Plaintiff's motion for leave to file an amended complaint. [9].

I. BACKGROUND

Plaintiff's initial complaint was dismissed after the Court found Plaintiff was attempting to combine unrelated claims against different Defendants in one lawsuit. *See* December 11, 2019 Merit Review Order; *see also George v Smith,* 507 F.3d 605, 607 (7th Cir. 2007)("multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2).

The Court reviewed each of the five counts alleged in Plaintiff's complaint and noted any deficiencies with the allegations. For instance, Plaintiff was advised he must provide time frames and clearly state the involvement of each named Defendant. *See* December 11, 2019 Merit Review Order, p. 2-3. In addition, since their appeared to be unrelated claims and Defendants, Plaintiff was advised if he wished "to pursue all claims, he must file separate lawsuits and pay separate filing fees." December 11, 2019

1

Merit Review Order, p. 3. The Court further explained it would "not divide the claims into two lawsuits now because of the scant information provided concerning each of Plaintiff's medical claims." December 11, 2019 Merit Review Order, p. 4.

Finally, the Court noted it appeared some of Plaintiff's claims might be barred by the statute of limitations, but it was not clear from the face of his complaint. *See* December 11, 2019 Merit Review Order, p. 4.

Plaintiff was given additional time and instructions to file an amended complaint clarifying his claims and choosing which claims to pursue in this lawsuit.

## II. MOTION TO AMEND

Plaintiff's motion for leave to amend begins with complaints about the litigation process. Plaintiff states he should be allowed "to hold officials accountable for their misconduct," but Plaintiff complains many of his claims have been dismissed. (Amd. Comp., p. 1). It appears Plaintiff may be referring to a previous lawsuit which is not currently before the Court. *See Mathews v. IDOC*, Case No. 18-1076 (dismissed on July 22, 2019).

Plaintiff also expresses his concerns regarding the Court's limitations on the number of claims and the specific requests for additional information. *See* December 11, 2019 Merit Review Order outlined in the Merit Review Order. As noted, the Plaintiff was not barred from pursuing his claims. The Court instead advised Plaintiff he could choose to pursue each of the claims listed in his initial complaint, but Plaintiff could not "dodge" the fee payment or three strikes provisions in the Prison Litigation Reform Act by filing unrelated claims against different defendants in one lawsuit. *George,* 507 F.3d

2

at 607. Furthermore, a complaint must provide time frames and explain the general involvement of each Defendant in order to put the Defendants on notice of the specific claims. *See* Fed.R.Civ.P. 8(a). Plaintiff must follow the directions provided.

Plaintiff has attached a proposed amended complaint to his motion. Therefore, Plaintiff's motion for leave to amend is granted pursuant to Federal Rule of Civil Procedure 15. [9]. The Court is still required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff again alleges 12 Defendants violated his constitutional rights at Pontiac Correctional Center including the Illinois Department of Corrections (IDOC), Director John Baldwin, Warden Michael Melvin, Officer Sara Johnson, Officer Susan Prentice, Lieutenant Thorsome, Lieutenant Sorenson, Nurse Jade Culkin, Physician's Assistant (PA) Ojelade, Dr. Tilden, Nurse Tracy, and Dr. Renzi.

Plaintiff has again identified five counts in his amended complaint.[1] The first count alleges Dr. Renzi used excessive force. (Amd. Comp., p. 15). Plaintiff says he was transferred to Pontiac Correctional Center in June of 2017 and he had "several deep

---

[1] While Plaintiff has numbered each count, he has not listed them in chronological order. For clarification, the Court will review the counts in the order they appear within the Amended Complaint, regardless of the number assigned by the Plaintiff.

3

lacerations to his body."(Amd. Comp., p. 15). Plaintiff provides no further explanation of these injuries.

Plaintiff says he was taken to see Defendant Dr. Renzi who questioned Plaintiff about his mental health. "Plaintiff calmly answered the questions," but had no memory of "previous days." (Amd. Comp., p. 15). Plaintiff denied he was suicidal or homicidal. However, Dr. Renzi ordered Plaintiff to be placed in four point restraints. When Plaintiff asked why, the Defendant stated, "Because I can." (Amd. Comp., p. 15).

Plaintiff says he was left strapped to a metal table for approximately three days and he "was never assessed during this period." (Amd. Comp., p. 15). It is unclear what the Plaintiff means by this statement, but it appears Plaintiff was not provided any care for his injuries. Plaintiff repeatedly asked Defendant Dr. Renzi to remove the restraints, but the Defendant refused.

The second count identified in the complaint alleges Plaintiff was kept in "filthy and unsanitary, dangerous living conditions." (Amd. Comp., p. 16). Plaintiff outlines the specific problems with cell N-114 from November 2, 2017 to at least February 6, 2018; and problems with cell N-307 from February 6, 2018 to an unspecified date. Plaintiff details blood and feces on the walls and ceiling, a filthy chuckhole, clogged vents, insects, mice, and sewage floods.

Plaintiff personally notified Defendants Prentice, Thornsome, Sorenson, Drysdale of these conditions, but they refused to take and action. Plaintiff also asked these individuals for cleaning supplies, but they refused. In addition, Plaintiff says he notified Defendants IDOC Director Baldwan, Warden Melvin, and Johnson through

both the grievance process and letters of the "pattern and practice," but nothing was done. (Amd. Comp., p. 16). Plaintiff states the problem with the cells was widely known within the facility.

As previously noted, simply "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." December 11, 2019 Merit Review Order, p. 3, *quoting George,* 507 F.3d at 609. However, to the extent Plaintiff was attempting to state an official capacity claim, Plaintiff has articulated a claim against Warden Melvin.

The third count alleges Defendants Dr. Tilden and Culkin were deliberately indifferent to a serious medical condition. Plaintiff says neither Defendant would provide any medical care for his injuries when he entered Pontiac in June of 2017. Plaintiff says he entered with "deep lacerations to his chest & testicles, along with shards of loose metal in his body." (Amd. Comp, p. 17). Plaintiff again provides no further explanation of how he received these injuries. Nonetheless, Plaintiff does state he asked both Defendants Tilden and Culkin for treatment including providing his prescribed pain medication, but each Defendant refused. Plaintiff says he also asked each Defendant for pain medication due to the pain he was suffering while in four-point restraints for three days, but again, the Defendants refused his requests.

Plaintiff's fourth count alleges Defendants P.A. Ojelade and Culkin were deliberately indifferent to a separate, skin condition. Plaintiff says sometime in 2017, he developed a skin condition which led to a rash as well as bleeding and open sores. Plaintiff submitted several sick call requests. On an unspecified day, Defendant Culkin

5

came to Plaintiff's cell, but refused to take him to the Health Care Unit for further examination, and refused to provide any care.

Plaintiff continued to submit sick call requests, and finally he was taken to see PA Ojelade on an unspecified date. The Defendant observed the bleeding and open sores, but again refused to provide any treatment. While it is unclear whether Plaintiff can demonstrate a serious medical condition, Plaintiff has stated a violation of his Eighth Amendment rights for the purposes of notice pleading.

In his final count, Plaintiff says Defendants Dr. Tilden, PA Ojelade, Culkin, and Tracy were deliberately indifferent to a wrist/hand injury. Plaintiff says sometime in late 2017 into 2018 he suffered with a serious injury after he slipped and fell in his cell. Plaintiff submitted several sick call requests, and met with each of the Defendants, but they refused to provide appropriate care. For instance, Plaintiff admits he received an x-ray, but Plaintiff says he repeatedly told the Defendants he did not have a fracture. Instead, Plaintiff says he suffered from a tear or some other injury causing pain and lack of mobility. Plaintiff maintains he should have received an MRI or other testing.

Under the Eighth Amendment, a plaintiff is "not entitled to demand specific care" and "is not entitled to the best care possible." *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir.1997). However, Plaintiff has alleged there was no modification in care when the treatment provided did not address his pain.

Therefore, based on a review of the amended complaint, Plaintiff has articulated the following claims:

6

1) Dr. Renzi violated Plaintiff's Eighth Amendment rights when the doctor refused to remove Plaintiff from four point restraints for three days in November of 2017 and refused to provide any care for Plaintiff's injuries.

2) Defendants Prentice, Thornsome, Sorenson, Drysdale, and Melvin violated Plaintiff's Eighth Amendment rights based on Plaintiff's living conditions from February of 2017 to at least February of 2018.[2]

3) Defendants Dr. Tilden and Culkin were deliberately indifferent to a serious medical condition in violation of the Eighth Amendment when they refused treatment and pain medication for both Plaintiff's lacerations and pain due to four-point restraints in November of 2017.

4) Defendants P.A. Ojelade and Culkin were deliberately indifferent to a skin condition in violation of the Eighth Amendment in 2017.

5) Defendants Dr. Tilden, PA Ojelade, Culkin, and Tracy were deliberately indifferent to a wrist/hand injury in 2017 into 2018.

As the Court has previously explained, Federal Rule of Civil Procedure 18 allows a plaintiff to include in one complaint every claim of any kind against a single defendant. Fed.R.Civ.P. 18(a). Federal Rule of Civil Procedure 20 allows additional claims against separate defendants only if the additional claims arise "out of the same transaction, occurrence, or series of transactions or occurrences." *See* Fed. R. Civ. P.

---

[2] Although Plaintiff's lawsuit also alleged the same problems with living conditions at Pontiac Correctional Center, Plaintiff's claims spanned until October of 2017. See Matthews v. IDOC, Case No. 18-1076, [1].

7

18(a), 20(a)(2). Consequently, the Seventh Circuit has repeatedly held "[u]nrelated claims against different defendants belong in different suits." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018), *quoting George,* 507 F.3d at 607.

The Court again notes Plaintiff can proceed with claims 1, 3, 4, and 5 in this lawsuit, but he cannot proceed with claim 2 in the same lawsuit since it involves different Defendants and a different occurrence. Therefore, the Court will sever the claim alleging unconstitutional living conditions into a new lawsuit. *See Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018)("When screening prisoners' complaints under the PLRA, courts can and should sever an action into separate lawsuits or dismiss defendants who are improperly joined under Federal Rule of Civil Procedure 20(a)(2)."). Plaintiff will have 21 days to either pay the $400 filing fee in full or file a motion for leave to proceed *in forma pauperis.*

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the amended complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges: a) Dr. Renzi violated Plaintiff's Eighth Amendment rights when the doctor refused to remove Plaintiff from four point restraints for three days in November of 2017 and refused to provide any care for Plaintiff's injuries; b) Defendants Dr. Tilden and Culkin were deliberately indifferent to a serious medical condition in violation of the Eighth Amendment when they refused treatment and pain medication for both Plaintiff's lacerations and pain due to four-point restraints in November of 2017;

c) Defendants P.A. Ojelade and Culkin were deliberately indifferent to a skin condition in violation of the Eighth Amendment in 2017; and d) Defendants Dr. Tilden, PA Ojelade, Culkin, and Tracy were deliberately indifferent to a wrist/hand injury in 2017 into 2018. The claims are stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said

Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a

change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Grant Plaintiff's motion for leave to amend, [9]; 2) Dismiss Defendants IDOC, John Baldwin, Michael Melvin, Sara Johnson, Susan Prentice, Thorsome, and Sorenson for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 2) Attempt service on Defendants pursuant to the standard procedures; 3) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; 4)Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act; 5) Sever Plaintiff's claim alleging Defendants Prentice, Thornsome, Sorenson, Drysdale, and Melvin violated Plaintiff's Eighth Amendment rights based on Plaintiff's living conditions from February of 2017 to at least February of 2018 into a separate lawsuit with a separate case number. Plaintiff will have 21 days to either pay the $400 filing fee in full or file a motion to proceed in forma pauperis. The Clerk should also file a copy of this order in the new case.**

ENTERED this 29th day of April, 2020.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE